**Victoria M. VOGE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 244–86C.**

United States Claims Court.

Jan. 16, 1987.

Guy J. Ferrante, Falls Church, Va., for plaintiff. King & Everhard, Falls Church, Va., of counsel.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant. Jan Rosen-Serafini, Dept. of the Navy, of counsel.

## ORDER

NETTESHEIM, Judge.

This case is before the court after argument on defendant's motion for partial summary judgment and plaintiff's cross-motion for summary judgment. Three issues have been raised: 1) whether this court can review the decision to terminate additional special pay ("ASP") to which a servicemember is entitled absent its termination; 2) whether officer fitness reports ("OFR's") need only be fair and legal when they are used in connection with promotion determinations and not ASP determinations; and 3) whether a court's review of these OFR's includes examining the underlying procedures for revoking temporary medical privileges after the revocation has been reported in an OFR.

## FACTS

Plaintiff Comdr. Victoria M. Voge ("plaintiff") at present and for the period of time in suit has served in the United States Navy. Her complaint seeks ASP from July 15, 1982, through June 15, 1985, and an order purging and correcting her records and requiring that the Secretary of the Navy consider her for retroactive promotion to the rank of captain by special selection board with all appropriate back-pay, allowances, and other benefits. Defendant's motion for partial summary judgment asserts that jurisdiction is lacking to consider plaintiff's claims other than entitlement to ASP for the period July 15, 1982, to June 30, 1985, which defendant concedes in the amount of $30,000.

The parties agree that there is no dispute with respect to the following facts.[1] Plaintiff is a medical officer, who served at Naval Regional Medical Center ("NRMC") Guam, from October 31, 1981, through March 31, 1983. When she arrived in Guam, plaintiff received temporary medical privileges as a flight surgeon which, although once extended, ultimately were revoked by the NRMC commanding officer on July 15, 1982, following a June 17, 1982 recommendation by the NRMC Guam Credentials Review Committee. The procedures for both extending and revoking her privileges were unorthodox. The instruc-

1. The facts have been tailored to limit discussion of the matters that plaintiff sought to protect from disclosure by sealing the record. *See* order entered July 16, 1986.

tion allowing for extension of temporary medical privileges beyond 90 days had been superseded when they were extended for an additional 90 days. The instruction applicable at the time did not allow for extensions. The applicable instruction also did not contemplate that the Credentials Review Committee meet in plaintiff's absence to consider revocation, as was done on May 27, 1982, before the formal meeting on June 17. Moreover, two individuals present at the May 27 meeting, the Director of Clinical Services (who was also the Chairman of the Credentials Review Committee) and the Chief of Internal Medicine, were involved in the incidents leading to the extension of privileges. Although they did not participate in the proceeding, they stayed in the room during the formal June 17, 1982 meeting that culminated in the recommendation to revoke.

Three adverse OFR's (October 31, 1981–June 16, 1982; June 17, 1982–August 31, 1982; September 1, 1982–March 31, 1983) referred to the extension of plaintiff's temporary medical privileges, the preliminary report by the Credentials Review Committee that revocation of plaintiff's temporary medical privileges was being considered, the decredentializing itself, and the other consequences that followed revocation.[2]

ASP is conditioned on the execution of an agreement to remain on active duty for at least one year, 37 U.S.C. § 302(c)(1) (1982), and plaintiff submitted such an agreement. When plaintiff requested ASP for the year July 1, 1982, to June 30, 1983, her commanding officer on August 26, 1982, recommended to the Chief, Bureau of Medicine and Surgery, that plaintiff's request be denied because her temporary medical privileges had been revoked and because she had received an adverse OFR for the period ending June 16, 1982. Thereafter, on August 8, 1983, a Special Pay for Medical Corps Officer Review Board approved the commanding officer's recommendation that

plaintiff be denied ASP for the one-year period. The board further recommended not to allow ASP for an additional two years. On August 12, 1983, the Director, Naval Medicine, approved the board's recommendations, thereby foreclosing plaintiff from ASP from July 1, 1982, to June 30, 1985. Plaintiff had filed complaints pursuant to 10 U.S.C. § 938 (1982), on August 10, 1982, and May 5, 1983, by which she sought review of certain actions taken by her commanding officer.[3] She was not selected for promotion to the rank of captain by the 1986 promotion board.

Before filing suit, plaintiff applied to the Board for the Correction of Naval Records (the "BCNR") requesting expungment of any reference in her records to the NRMC Guam Credentials Review Committee proceedings, comments by her superiors regarding the proceedings, and certain medical reports; correction of her records to show that she was granted medical privileges; removal of the first OFR and expungment of references from the later two OFR's to the revocation process; ASP for the three-year period; and consideration by a special promotion board. On February 7, 1986, the BCNR found an injustice warranting: (1) deletion from the October 31, 1981–June 16, 1982 OFR of language referring to prospective action, i.e., the preliminary report of the Credentials Review Committee to the effect that revocation was recommended; the scheduling of plaintiff's formal appearance on June 17, 1982; and subjective remarks about the impact of the forthcoming June 17 meeting. The BCNR also ordered removal of the June 17, 1982–August 31, 1982 OFR, which, despite its being adverse, had not been shown to plaintiff before it was issued. The BCNR concluded that the OFR's were otherwise not "substantially erroneous or unfair" and that her selection for promotion would have been "unlikely" even with the correc-

---

**2.** *See supra* note 1. Failure to discuss the medical and educational consequences to plaintiff of the decredentializing procedure does not imply that they have been overlooked.

**3.** The BCNR did not review plaintiff's complaints under 10 U.S.C. § 938, so the court cannot consider them. *See* Plf's Br. filed Dec. 1, 1986, at 15.

tions to her records. Except as noted, relief was otherwise denied.

## DISCUSSION

*Jurisdiction to review OFR's considered in terminating ASP*

ASP is awarded pursuant to 37 U.S.C. § 302, which provides, in pertinent part:

(a)(1) An officer who is an officer of the Medical Corps of the Army or the Navy or an officer of the Air Force designated as a medical officer and who is on active duty under a call or order to active duty for a period of not less than one year is entitled to special pay in accordance with this subsection.

. . . .

(c)(1) An officer may not be paid additional special pay under subsection (a)(4) of this section or incentive special pay under subsection (b) of this section for any twelve-month period unless the officer first executes a written agreement under which the officer agrees to remain on active duty for a period of not less than one year beginning on the date the officer accepts the award of such special pay.

Once established, entitlement to ASP can be terminated pursuant to 37 U.S.C. § 302(c)(2), which provides in full:

(2) Under regulations prescribed by the Secretary of Defense under section 303a(a) of this title, the Secretary of the military department concerned may terminate at any time an officer's entitlement to the special pay authorized by subsection (a)(4) or (b)(1) of this section. If such entitlement is terminated, the officer concerned is entitled to be paid such special pay only for the part of the period of active duty that he served, and he may be required to refund any amount in excess of that entitlement.

Defendant has conceded plaintiff's entitlement to ASP for a longer period than prayed for in her complaint. Def's Br. filed Oct. 23, 1986, at 3 & n. 4. Plaintiff's entitlement to special pay was not terminated pursuant to 37 U.S.C. § 302(c)(2), requiring that the Secretary of the Navy terminate an officer's entitlement to ASP consistent with regulations prescribed by the Secretary of Defense. Defendant states that it has "failed to establish that proper procedures were followed to terminate Commander Voge's entitlement to ASP...." Def's Br. filed Oct. 23, 1986, at 3 (footnote omitted). Specifically, defendant suggests the particular failing was that the review board considered information beyond that prescribed in SECNAVINST 7220.75B ¶ 7b (Sept. 23, 1983), which confines review of the officer's performance to the OFR's issued as of the date of the agreement entitling the officer to ASP; supporting documents; the commanding officer's letter; and the officer's rebuttal, if any. The offending information apparently consisted of a microfiche of plaintiff's entire record, including an OFR issued subsequent to the date on which she became entitled to ASP. Defendant contends, however, that this court can do no more than enter judgment for the amount of ASP it has conceded based upon the procedural error, because the decision to terminate, assuming the proper procedures are followed, is purely discretionary. Plaintiff argues vigorously that collateral to entering the money judgment defendant would allow, 28 U.S.C. § 1491(a)(2) (1982), empowers this court to grant the incidental relief she seeks by way of correcting her records and ordering that she be considered for promotion.

In *German v. United States*, 225 Ct.Cl. 1, 633 F.2d 1369 (1980), the United States Court of Claims took jurisdiction over a claim for termination of variable incentive pay ("VIP") after plaintiff had qualified to receive it. The court examined the termination process, holding that the Navy improperly considered deterioration in the officer's performance before he signed the VIP agreement. In doing so, the court construed the language of the regulation governing the Secretary of Defense's authority to terminate " 'upon a determination that the officer's performance has deteriorated to a level at which no premium should be placed upon his continued ser-

vice.'" 225 Ct.Cl. at 5, 633 F.2d at 1371; *cf. Adair v. United States*, 227 Ct.Cl. 345, 648 F.2d 1318 (1981) (statute authorizing VIP for public health officers did not provide for a right to pay; statute construed as discretionary mechanism), *followed in Pardo v. United States*, 227 Ct.Cl. 377, 648 F.2d 1330 (1981) (no monetary entitlement to VIP in action brought by Army Medical Corps officer). Defendant asserts that VIP and ASP are different in that terminating ASP is purely discretionary, as shown by the legislative history to the predecessor statute providing for ASP. Yet the decision to terminate VIP is also discretionary. The Court of Claims in *German* did not review whether the officer's performance had deteriorated, but ruled only that records the board reviewed should not have been considered.

Defendant argues that the court would go beyond *German* and intrude into the discretionary matrix by examining the records that the review board considered, specifically the OFR's, to determine their legality. However, the review defendant seeks to inhibit is the same review for procedural error made in *German* and in cases where allegedly defective records are considered by promotion boards. Unlike cases involving discharge following denial of promotion, defendant contends that the record considered in an ASP termination proceeding need not present plaintiff's service career on a fair and equitable basis. *Saunders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 814 (1979). According to defendant, this fairness guarantee, and the statutes from which the right is derived, 10 U.S.C. §§ 615, 617 (1982 & Supp.1986), apply only to the officer's record when before a promotion board. The result of defendant's argument is that plaintiff could not challenge the legality of her record until discharged. Thus, according to defendant, plaintiff could be denied ASP based on allegedly illegal information in her OFR's as long as the proper termination procedures were followed, but she could not be denied pay following a discharge for non-promotion based on the same information in her OFR's.

This court can order an illegal OFR expunged, as long as the cause of action is based on a statute mandating the payment of money. *Saunders*, 219 Ct.Cl. at 314, 594 F.2d at 820; *see Testan v. United States*, 424 U.S. 392 (1976); *United States v. King*, 395 U.S. 1, 96 S.Ct. 948, 47 L.Ed.2d 114 (1969); *cf. United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906) (compensation to which plaintiff entitled by law as federal employee due during wrongful suspension gives right of action). By exercising its power, the court does not make promotion determinations. The United States Claims Court, like its predecessor, has no authority to order a promotion absent a statute or regulation mandating promotion or entitling plaintiff to promotion as a matter of law. *E.g., Schuenemeyer v. United States*, 4 Cl.Ct. 649, 652 (1984) (citing cases); *Alford v. United States*, 3 Cl.Ct. 229, 231 (1983) (citing cases). The Supreme Court established in *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953), that a court cannot order an officer of the military to be commissioned or to define duties. Therefore, it is concluded that the court can review OFR's in an action challenging the termination of ASP, which derives from a money-mandating statute.

Defendant's argument also must be rejected as impractical. If a servicemember is entitled to a legally constituted record for promotion, *a fortiori* the record should be corrected as soon as possible. Defendant does not hesitate to trot out the affirmative defense of laches in military pay cases on the ground that the military is prejudiced by delay in contesting OFR's. Plaintiff here only takes occasion to ask that her record be in compliance with the law. If an allegedly illegal record can be used for other purposes, such as an ASP termination proceeding, and a plaintiff is legitimately in court on the basis of a money-mandating statute, so much the better that the contested OFR's be reviewed in a more timely manner.

*Review of the procedures in the decredentializing action*

■ A decision of the BCNR is on review. Plaintiff must show that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *E.g., Alberico v. United States,* 783 F.2d 1024, 1029 (Fed.Cir.1986) (citing cases). The BCNR concluded, *inter alia,* that some of the procedures antecedent to decredentializing were not defective and the ones that were contrary to applicable procedures did not harm her. Plaintiff contends that the procedural errors—the irregularities noted by the BCNR and others the board refused to find in error—infect the revocation of her temporary medical privileges and everything that flowed from it, including references to the underlying events in her OFR's, which contributed to her later failure to be selected for promotion.

■ The court declines to disturb the BCNR's decision because the procedures whereby plaintiff's temporary medical privileges were revoked, even if procedurely defective, do not amount to error in the preparation or composition of her record. The type of error in plaintiff's OFR's that is cognizable and can be remedied by judicial review is error in their preparation or composition. In *Hary v. United States,* 223 Ct.Cl. 10, 17–18, 618 F.2d 704, 708 (1980), involving an officer effectiveness report ("OER") which is the equivalent of an OFR, the Court of Claims stated:

[P]laintiffs must do more, to invoke court intervention, than merely allege or prove that an OER seems inaccurate, incomplete, or subjective in some sense. The showing is not enough where an allegation, even if proved, fails to establish the presence of "factors adversely affecting the ratings which had no business being in the rating process," *id.,* or where there is no clear violation of a specific objective requirement of statute or regulation, or where there is no misstatement of a significant hard fact. Nor is it enough to impel us to act that the rater may now say that he scored the claimant too low. In *Tanaka v. United States,*

210 Ct.Cl. 712 [538 F.2d 348] (1976), *cert. denied,* 430 U.S. 955 [97 S.Ct. 1599, 51 L.Ed.2d 804] (1977), we held that rater's statement that his opinion had changed and that he would now rate plaintiff higher, absent any misstatements or fact in the OER, did not tender a triable issue on the accuracy of an OER. In *Savio v. United States,* 213 Ct.Cl. 737 [553 F.2d 105] (1977), the plaintiff supported a challenge to the accuracy of an OER with a statement by the rater that the rating was not consistent with the rater's high regard for the plaintiff, blaming this on his slight personal attention to the plaintiff's performance of duties, words of caution he had received from his superiors on inflating numerical ratings in OERs, and his failure to include pertinent information in the report. Again, there were no allegations of misstatements of hard fact in the original rating, and we refused to order the removal of the challenged OER. *See also Borgford v. United States, supra* [221 Ct.Cl. 920, 618 F.2d 124]. In *Stewart v. United States,* 222 Ct.Cl. 42, 611 F.2d 1356 (1979), we held that plaintiff's allegation that OERs were inaccurate because his rater's intentionally downgraded his ratings in order that he would show job progression was an insufficient ground for our voiding the OERs. *Id.* at 45, 611 F.2d at 1358. *See also Reid v. United States, supra* [221 Ct.Cl. 864, 618 F.2d 123]; *Wilson v. United States, supra* [221 Ct.Cl. 852, 618 F.2d 123].

*Henderson v. United States,* 175 Ct.Cl. 690 (1966) (per curiam), *cert. denied,* 386 U.S. 1016, 87 S.Ct. 1373, 18 L.Ed.2d 455 (1967), does not require a different result. There the Court of Claims held that the procedures for judging a pilot unqualified for further training were defective. The case is distinguishable because the decision reviewed precipitated his discharge, *i.e.,* absent qualification, he could no longer serve in the military. *Henderson* did not deal with OFR's.

■ Plaintiff asks for a two-tiered analysis: judicial review of how the OFR's

were prepared and judicial review of the legality of the procedures undertaken in the decredentializing process.[4] This the court will not do, for the door thereby would be opened to judicial review of every procedure whereby a servicemember is deemed fit or qualified for some matter that is reported in an OFR. Unquestionably, the decision to revoke temporary medical privileges is not judicially reviewable in this court because it is not based on a money-mandating statute. Even if the decision to terminate ASP was based on the results of the decredentializing procedure, the court will not overturn the decision to terminate ASP unless 1) the procedures for making the decision to terminate ASP were themselves defective, which defendant has admitted, or unless 2) the OFR's considered in the ASP determination were defective, and the BCNR ordered one OFR removed for improper preparation. The implications of expanding the court's inquiry to reviewing military procedures that underlie all aspects of a servicemember's career reported in OFR's are awesome. Prudence dictates that judicial review be limited to the preparation and content of the OFR's themselves. In this case there was a violation of procedures in terminating ASP, but no violation of procedures in preparing the two OFR's that the BCNR refused to void.

Assuming that this court could find an OFR defective insofar as it referred to a defective decredentializing procedure, the OFR for October 31, 1981–June 16, 1982, would remain substantially as the BCNR left it.[5] Plaintiff assumes that, because all comments in her OFR's relating to the decredentializing procedure could be removed if the court found the decredentializing procedure materially defective, all related negative comments would be removed and that her grades would change. This is not so. The events precipitating revocation

of plaintiff's temporary medical privileges were the same events that plaintiff's commanding officer commented on in this OFR as indicating deficient performance. Consequently, even if the court were to find that the procedures for revoking plaintiff's temporary medical privileges were error, and not harmless error, and ordered the remaining references to plaintiff's temporary medical privileges in this OFR purged, the separate, but parallel, narrative comments and grades relating to the same conduct would remain. The material that the BCNR did not expunge from the October 31, 1981–June 16, 1982 OFR consists, principally of opinions of her superior, who was also a medical officer, concerning plaintiff's medical judgment. The events forming the complaint in this case were instances in which her medical judgment was questioned. Plaintiff may have been the victim of a cabal. Certainly her first commanding officer in Guam can be criticized for allowing individuals to complain to him out of the chain of command. The commanding officer nonetheless could, and did, make negative comments based on his observation of plaintiff.

The other OFR that the BCNR declined to remove (September 1, 1982–March 3, 1983) contains fairly neutral comments on plaintiff's performance and references to the events that followed revocation of her temporary medical privileges. Again, even if the latter comments were to be excised, the former are proper, within the discretion of her commanding officer to make, and would remain.

■ The problem with plaintiff's case is that it turns on judgments by doctors of plaintiff's medical ability. The administrative record contains numerous rebuttals by plaintiff to comments that her professional skills or judgment were found wanting. The BCNR was justified fully in deferring

4. After the BCNR removed from the first OFR (October 31, 1981–June 16, 1982) references to the decredentializing procedures and removed the second OFR (June 17, 1982–August 31, 1982) from plaintiff's record, the only mention to the revocation are a reference to the extension of her temporary medical privileges in the first

OFR and comments in the third (September 1, 1982–March 31, 1983) on education required after the revocation. The BCNR properly may remove from OFR's whatever it deems appropriate. The court is constrained not to go as far.

5. *See supra* note 4.

to the judgments of plaintiff's superiors on matters of medical judgment, especially since her rebuttals are themselves opinions as to why her skills or judgment were not flawed in each instance—matters on which superiors and their subordinates often vary. The court will not second guess the medical judgments of plaintiff's superiors. *See Braddock v. United States,* 9 Cl.Ct. 463, 474 (1986). The BCNR's decision was not arbitrary, capricious, or unreasonable based on the record before the BCNR and this court.

### CONCLUSION

Based on the foregoing, defendant's motion for partial summary judgment is granted and plaintiff's cross-motion for summary judgment is denied, except insofar as plaintiff is entitled to ASP. Accordingly,

IT IS ORDERED, as follows:

1. The Clerk of the Court shall enter judgment for plaintiff in the amount of $30,000, with instructions to withhold $6,000 for federal income tax purposes. The complaint is to be dismissed in all other respects.

2. The protective order shall be lifted 5 days after expiration of the time for appeal, unless an appeal is filed, in which case the protective order shall remain in effect until further order of the court.