**Victoria M. VOGE, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 87–1307.**

United States Court of Appeals, Federal Circuit.

April 19, 1988.

 

Eugene R. Fidell (argued), Klores, Feldesman and Tucker, Washington, D.C., for plaintiff-appellant.

John S. Groat (argued), Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., for defendant-appellee. With him on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and M. Susan Burnett, Asst. Director. Also on the brief were LCDR Brian Robertson, LCDR Jan Rosen–Serafini and LT Mark Williams, Dept. of the Navy, of counsel.

Before MARKEY, Chief Judge, RICH and MAYER, Circuit Judges.

## OPINION

MAYER, Circuit Judge.

This is an appeal from an order of the United States Claims Court, 11 Cl.Ct. 510 (1987), that awarded Commander Victoria M. Voge $30,000 in Additional Special Pay (ASP) but found no error in the preparation or content of Voge's military service records. We affirm the award of ASP, but vacate that portion of the order purporting to review Voge's service records.

### Background

Voge, a medical doctor, was assigned to the Naval Regional Medical Center (NRMC) on Guam in 1981. Upon arrival, she was granted temporary clinical privileges as a flight surgeon. Clinical privileges typically "reflect a health care provider's qualifications for staff membership and define ... the procedures the practitioner may perform." Soon after her arrival, Voge's superiors began to express doubts about her medical competency. In 1982, her temporary clinical privileges were revoked and her application for permanent privileges was denied. Three adverse Officer Fitness Reports (OFR), covering periods between October 31, 1981 and March 31, 1983, referred to the revocation and ultimate denial of Voge's application for clinical privileges.

Also in 1982, Voge requested ASP, a form of remuneration that a medical officer normally receives after executing an agree-

ment to remain on active duty for at least one year. *See* 37 U.S.C. § 302(c)(1). Because her clinical privileges had been revoked and she had received an adverse OFR for the period ending June 16, 1982, however, Voge's commanding officer recommended that her request for ASP for the year ending June 30, 1983 be denied. A Medical Corps Officer Review Board approved, and recommended that she also be denied ASP for two additional years. Accordingly, Voge was denied ASP from July 1, 1982 until June 30, 1985. In addition, she was passed over for promotion to captain in 1986.

Voge sought relief from the Board for the Correction of Naval Records (BCNR). *See* 10 U.S.C. § 1552. The Board recommended correction of portions of two adverse fitness reports but "concluded that the OFR's were otherwise not 'substantially erroneous or unfair' and that [Voge's] selection for promotion would have been 'unlikely' even with the corrections to her records." This was approved by the Secretary of the Navy. She then filed suit in the Claims Court seeking ASP from July 15, 1982 through June 15, 1985; review of evaluations made and decisions taken by military medical boards, committees and officers about her competence as a medical officer and correction of alleged errors in her OFR's and other records resulting from those activities; and an order requiring the Secretary of the Navy to consider her for retroactive promotion to the rank of captain with back pay and other benefits.

Because of apparent procedural errors in the action taken to deny ASP, the government conceded that Voge was entitled to the full amount of ASP she sought. Specifically, the government conceded that for "the period July 15, 1982, through June 30, 1983 ... a review board considered adverse information outside the scope of the information the board was to consider pursuant to the applicable regulation." Moreover, it acknowledged that for "the period July 1, 1983, through June 30, 1985, the cognizant official never made a discretionary determination to deny Voge ASP for that period, as is required by regulation."

Notwithstanding Voge's acknowledged entitlement to ASP, the government argued that the Claims Court had no jurisdiction to grant collateral relief by correcting Voge's military service records. In the government's view, the court could not "intrude into the [military's] discretionary matrix by examining the records that the review board considered."

The Claims Court considered the case on cross-motions for summary judgment. It ordered that the Navy pay Voge $30,000, an amount representing the ASP she had been denied and the Navy conceded she was due. It held, moreover, that it had jurisdiction to review Voge's service records pursuant to its review of the denial of ASP. However, the court found no error in the "preparation or content" of the OFR's that the BCNR refused to void, and said that Voge had no right to reconsideration of her nonselection for promotion to captain. Accordingly, the court denied any further relief.

On this appeal, Voge argues that the Claims Court has broad authority to review the ASP denial decision for both substantive and procedural error and erred in refusing to order a variety of corrections to her personnel records, including the removal of adverse OFR's and the deletion of any reference to the revocation of her clinical privileges. She further asserts that the court erred in refusing to order that she be considered for retroactive promotion to captain. The government responds that the court had no jurisdiction to review the ASP denial decision beyond assuring the Navy had complied with its regulations in the process.

### Discussion

The dispute centers on the scope of the Claims Court's ability to review a decision by the military to deny ASP to a medical officer. In particular, the question is whether the court may review the merits of an ASP denial or whether its authority extends only to procedural violations.

■ There is no dispute that the Claims Court had jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), to entertain this

suit because the ASP statute, 37 U.S.C. § 302, requires the payment of money to military medical officers. If a statute mandates payment by the government, the Tucker Act authorizes suit in the Claims Court. *See, e.g., Skinner v. United States,* 594 F.2d 824, 831 (Ct.Cl.1979). The argument is over the extent of the jurisdiction, Voge arguing that it extends to both procedural and substantive review of the ASP denial, the government that it stops once the procedural aspects have been examined.

## I.

Starting with the area of common agreement, we concur that the Claims Court may review the ASP denial process for compliance with established procedures. In pertinent part, 37 U.S.C. § 302(c)(2) says, "Under regulations prescribed by the Secretary of Defense ..., the Secretary of the military department concerned may terminate at any time an officer's entitlement to [ASP]." It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all, and certainly if directed to promulgate them by Congress, as in this case. *See Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957). Here, the Secretary of the Navy prescribed procedural regulations to be followed when terminating ASP. *See* 11 Cl.Ct. at 513. Because they apparently were violated, the Navy conceded that Voge was entitled to the full amount of ASP she had been denied. Absent this concession, the procedural regularity of the termination would have been fully reviewable in the Claims Court.

## II.

The next question, the heart of this dispute, is whether the court may review the substantive merits of the decision to terminate ASP. Judicial deference must be "at its apogee" in matters pertaining to the military and national defense. *Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654-55, 69 L.Ed.2d 478 (1981); *see also Orloff v. Willoughby,* 345 U.S. 83, 93, 73

S.Ct. 534, 539-40, 97 L.Ed. 842 (1953) ("judges are not given the task of running the Army"). Accordingly, "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Department of Navy v. Egan,* —— U.S. ——, 108 S.Ct. 818, 825, 98 L.Ed.2d 918 (1988).

In this case Congress statutorily entrusted the decision whether or not to terminate a medical officer's entitlement to ASP to the discretion of the military. Section 302 is clear and emphatic. It is even supported by the legislative history cited to us in an unnecessary effort to bolster the language of the statute. That section was "intend[ed] ... to provide authority for termination of those special pays [including ASP] ... similar to the authority provided by [37 U.S.C. § 313(b) ]." H.R.Rep. No. 96-904, 96th Cong., 2d Sess. 9, *reprinted in* 1980 *U.S.Code Cong. & Admin.News* 1722, 1730. Under 37 U.S.C. § 313 (1976) (repealed by Pub.L. No. 96-513, Title IV, § 414(a), 94 Stat. 2906 (1980)), the payment of special pay was a matter left to the judgment of the Secretary who "could at any time terminate an officer's entitlement" to it. *See Adair v. United States,* 648 F.2d 1318, 1322, 227 Ct.Cl. 345 (1981).

The government proposes that judicial review is therefore foreclosed because of an absence of jurisdiction, as indeed it was in *Adair* with variable incentive pay (VIP), a form of special compensation to medical personnel similar to ASP. But here we have a statute which all agree mandates payment of ASP until discretion is exercised to deny or terminate it. *Adair* addressed a statute that did not require payment until a discretionary decision was taken to pay the VIP; it was not a money-mandating statute. *See also Pardo v. United States,* 648 F.2d 1330, 1333 (Ct.Cl. 1981). What we face is a jurisprudential question: Can the Claims Court review the military's exercise of discretion when it has jurisdiction under the Tucker Act because of the mandatory monetary feature of the

statute? We think not. It presents a non-justiciable question.

A controversy is "justiciable" only if it is "one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir. 1958), *rev'd on other grounds,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *see also Egan v. Dep't of Navy,* 802 F.2d 1563, 1581 (Fed.Cir.1986) (Markey, C.J., dissenting), *rev'd,* —— U.S. ——, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). Here there are no tests or standards for the court to apply in determining whether the decision to terminate ASP is correct. *Cf. American Fed'n of Gov't Employees, Local 2017 v. Brown,* 680 F.2d 722, 726 (11th Cir.1982) (decision to contract out military services unreviewable where there were no guidelines against which the agency decision could be measured). Instead, Congress provided only that the determination to deny ASP may be made "at any time" by the Secretary.

"The complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments ...," and "[t]he ultimate responsibility for these decisions is appropriately vested in branches of the government which are periodically subject to electoral accountability." *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973). Here the "ultimate responsibility" for making the determination whether to terminate ASP was explicitly vested by Congress in the military. Courts do not have the institutional competence to make the substantive determination that a particular medical officer is deserving of additional compensation. *Cf. Garbacz v. United States,* 656 F.2d 628, 636 (Ct.Cl.1981) (Court of Claims had no authority to review the decision by the Administrator of NASA to give plaintiffs less than maximum salary increases since that decision was "wholly within [the] agency's discretion"). As the record shows, many military and medical factors went into the decision to deny Voge ASP, and it would be singularly inappropriate to second-guess the judgment of the military medical officers involved. *Cf. Maier v. Orr,* 754 F.2d 973, 984 (Fed.Cir. 1985).

This is like thousands of other routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with. *See, e.g., Gilligan,* 413 U.S. at 10, 93 S.Ct. at 2446 ("training, weaponry and orders" of the National Guard presents nonjusticiable issue); *Orloff,* 345 U.S. at 93, 73 S.Ct. at 540 ("not within the power" of the courts to review determination to assign doctor to particular duties in the medical field); *Wilson v. Walker,* 777 F.2d 427, 429 (8th Cir. 1985) ("[t]raditional notions of judicial restraint and of the separation of powers" require courts to refuse to review military duty assignments); *Nieszner v. Mark,* 684 F.2d 562, 565 (8th Cir.1982) (challenge to Air Force regulation imposing mandatory age restrictions for commissioned officers is nonjusticiable); *Perkins v. Rumsfeld,* 577 F.2d 366, 368 (6th Cir.1978) (no jurisdiction over decision to transfer function from one military establishment to another); *Schulke v. United States,* 544 F.2d 453, 455 (10th Cir.1976) (decision whether "to prefer charges under the Uniform Code of Military Justice" not subject to judicial review); *Turner v. Egan,* 358 F.Supp. 560, 563 (D.Alaska), *aff'd mem.,* 414 U.S. 1105, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (no review of forced retirement of officers after specified number of years of military service).[1] Although the Claims Court had the authority to enter judgment for the amount of ASP that was concededly due

---

1. There is a significant difference between relatively minor and routine military personnel actions, like the denial of ASP, and the denial of all pay and allowances through allegedly unlawful discharge from military service because of statutory violations by the military departments.

Nothing we say here is directed to the latter type claim which is extensively addressed in cases like *Sanders v. United States,* 594 F.2d 804, 814 (Ct.Cl.1979), *Yee v. United States,* 512 F.2d 1383, 1388 (Ct.Cl.1975), and *Clackum v. United States,* 296 F.2d 226, 229 (Ct.Cl.1961).

because of procedural defects, that is as far as it could go.[2]

## III.

█ Voge counters, however, that even if the Claims Court's review of the ASP termination decision is limited to procedural error the court nonetheless must correct any errors in her service records "collateral" to its award of ASP. She relies on 28 U.S.C. § 1491(a), which in pertinent part provides:

(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort....

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records....

The argument is untenable for two reasons. First, section 1491(a) gives the Claims Court power to order the correction of military records only "incident of and collateral to" its award of a money judgment. *See Silbert v. United States*, 566 F.2d 1190, 215 Ct.Cl. 913 (1977) (no power to correct records where claimant did not seek money judgment); *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975) (no power "to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award"). Here, review of Voge's service records cannot be justified as "incident

of and collateral to" the award of ASP because there was no reason to consider them in deciding whether in the ASP termination decision the military followed its own regulations. The regularity of her military records and the actions of her superiors in evaluating her performance as a doctor and officer is entirely unrelated to that issue. In essence, she suggests that the fortuity of the ASP decision is sufficient to open all of her records and the actions of boards and officers over a period of several years to judicial scrutiny when they would be otherwise unreviewable in the Claims Court. *See Abruzzo v. United States*, 513 F.2d 608, 611, 206 Ct.Cl. 731 (1975) (court's power to award claimant money judgment did not give it authority to grant equitable relief by directing "his appointment as an active-duty reserve officer"); *see also Brown v. United States*, 3 Cl.Ct. 31, 47 (1983) (where claim for money judgment was dismissed, Claims Court had no jurisdiction over plaintiff's claim for correction of records and reinstatement), *aff'd*, 741 F.2d 1374 (Fed.Cir.1984); *cf. Carman v. United States*, 602 F.2d 946, 949, 221 Ct.Cl. 165 (1979) (there must be a "sufficient nexus" between the money and the equitable claim for Claims Court to consider equitable claim).

The second reason for refusing to adopt Voge's contention is that it would allow the Claims Court to do indirectly what it is foreclosed from doing directly. By considering her service records for error in their "preparation or content," the Claims Court was passing on the merits of the decision to deny ASP which was first and last for the Navy.

We reach our conclusion notwithstanding that the naval correction board did fully review this case on the merits. But the board acts on behalf of the Secretary and its activities are not inconsistent with the

---

**2.** *Koster v. United States*, 685 F.2d 407, 412 (Ct. Cl.1982), held that even where an action vacating an officer's temporary grade was discretionary it was subject to review for constitutional violations. Here, however, there was nothing in the revocation of Voge's clinical credentials, the composition of her service records, or the termination of ASP that rises to the level of a constitutional violation. We save for another day the

difficult question of the court's power of review when a clear constitutional violation is established. *See Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir.1971) (establishing four-factor test to apply to determine justiciability when a constitutional violation is claimed); *see also* Note, *Judicial Review of Constitutional Claims Against the Military*, 84 Colum.L.Rev. 387 (1984).

contemplation of section 302 that discretion reside with the military. This does not, however, enlarge the justiciability of its decision in the Claims Court, just as board action on non-monetary claims does not enlarge the jurisdiction of that court to entertain them. *See, e.g., Reale v. United States,* 529 F.2d 533, 208 Ct.Cl. 1010, 1013 (1976) (court does not function as "a sort of super Correction Board"). We vacate that portion of the court's order purporting to review Voge's service records.

### IV.

Lastly, we turn to Voge's demand that her nonselection for promotion to captain be set aside and that she be considered for a retroactive promotion. As we have noted, strong policy reasons compel courts "to allow the widest possible latitude to the armed services in their administration of personnel matters." *Sanders v. United States,* 594 F.2d 804, 813, 219 Ct.Cl. 285 (1979); *see also Orloff,* 345 U.S. at 94, 73 S.Ct. at 540. Accordingly, absent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain this claim. *Ewanus v. United States,* 225 Ct.Cl. 598 (1980); *Curry v. United States,* 609 F.2d 980, 983, 221 Ct.Cl. 741 (1979). This demand was properly refused.

### *Conclusion*

The Claims Court's judgment in favor of Voge for $30,000 in ASP is affirmed, but that portion of the order purporting to review her military service records is vacated.

AFFIRMED IN PART AND VACATED IN PART.