NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

—————————————

**DAVID O. EVANS,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

—————————————

2017-2319

—————————————

Appeal from the United States Court of Federal Claims in No. 1:16-cv-00717-EJD, Senior Judge Edward J. Damich.

—————————————

Decided: August 29, 2018

—————————————

LOUISE PARIS, Louise Paris Attorney at Law, Canton, MI, for plaintiff-appellant.

SONIA MARIE ORFIELD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE, CHAD A. READLER.

—————————————

Before LOURIE, O'MALLEY, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant David O. Evans appeals an order of the U.S. Court of Federal Claims dismissing his claims for military back pay, disability retirement benefits, and review of an Army Board for Correction of Military Records ("ABCMR") decision for lack of jurisdiction. *See Evans v. United States*, No. 1:16-cv-00717-EJD (Fed. Cl. May 31, 2017) ("May 31 Order") (J.A. 2–4). Mr. Evans also contends that the Court of Federal Claims erred when it issued three orders that: (1) denied his motions to reconsider or modify the judgment ("the Post-Judgment Motions"); (2) precluded him from filing further motions for reconsideration; and (3) threatened sanctions if additional motions were filed in contradiction of its order. *See Evans v. United States,* No. 1:16-cv-00717-EJD (Fed. Cl. June 5, 2017) ("June 5 Order") (J.A. 55); *Evans v. United States,* No. 1:16-cv-00717-EJD (Fed. Cl. June 8, 2017) ("June 8 Order") (J.A. 57); *Evans v. United States,* No. 1:16-cv-00717-EJD (Fed. Cl. July 5, 2017) ("July 5 Order") (J.A. 58) (collectively, "the Orders on Appeal"). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2012). We affirm.

BACKGROUND

Mr. Evans enlisted in the U.S. Army on December 17, 1958. Suppl. App. 1–3. After being court-martialed three times, *id.* at 6, and receiving non-judicial punishment three times, *id.* at 7, he was separated from the service due to "undesirable habits or traits of character" with an "undesirable discharge" on April 21, 1960, *id.* at 32; *see id.* at 3 (stating the date of discharge). Between 1962 and 2015, Mr. Evans submitted four applications for a discharge upgrade and two requests for reconsideration of previous determinations to the Army Discharge Review Board ("ADRB") and ABCMR, all of which were denied. *See id.* at 43–195. The ABCMR issued its most recent

denial of a request for discharge upgrade on January 12, 2016 ("the 2016 ABCMR Decision"). *Id*. at 179.

On June 20, 2016, Mr. Evans filed a complaint with the Court of Federal Claims seeking, for the first time, military back pay, disability retirement benefits, and Department of Veterans Affairs ("VA") benefits, and challenging the 2016 ABCMR Decision denying his request for a discharge upgrade. J.A. 2, 32–37. In granting the Government's motion to dismiss for lack of jurisdiction, J.A. 4–5, the Court of Federal Claims found that (1) Mr. Evans's claim for military back pay was filed well beyond the applicable statute of limitations, J.A. 2–3; (2) Mr. Evans failed to bring his request for retirement disability benefits to a proper military board of review prior to initiating action at the Court of Federal Claims, J.A. 3; and (3) Mr. Evans's VA benefits claim must proceed through a separate adjudicative channel involving the Board of Veterans Appeals and the U.S. Court of Appeals for Veterans Claims, J.A. 3. With regard to the 2016 ABCMR Decision, the Court of Federal Claims found that a request for a discharge upgrade is not a money-mandating action, and is therefore not within its jurisdiction. J.A. 3–4.

Following the Order dismissing his Complaint, Mr. Evans filed three motions for reconsideration, *see* Pl.'s Mot. for Recons., *Evans v. United States,* No. 1:16-cv-00717-EJD (Fed. Cl. June 4, 2017), ECF No. 61 ("First Mot. for Recons."); Pl.'s 2nd Mot. for Recons., *Evans v. United States*, No. 1:16-cv-00717-EJD (Fed. Cl. June 6, 2017), ECF No. 63 ("Second Mot. for Recons."); Pl's 3rd Mot. for Recons., *Evans v. United States*, No. 1:16-cv-00717-EJD (Fed. Cl. June 7, 2017), ECF No. 65 ("Third Mot. for Recons."), all of which were denied, J.A. 55–58. Following the Third Motion for Reconsideration, the Court of Federal Claims precluded Mr. Evans "from filing any further motions for reconsideration." J.A. 57. Mr. Evans subsequently filed a Motion to Alter or Amend the

Judgment.   Pl.'s Mot. to Alter or Amend J., *Evans v. United States*, No. 1:16-cv-00717-EJD (Fed. Cl. June 21, 2017), ECF No. 67 ("Mot. to Alter or Amend").   In its denial of this motion, the Court of Federal Claims "precluded [Mr. Evans] from filing any further motions of any kind" and "directed [the Clerk's Office] to strike any further filings, other than a notice of appeal," stating that "[the Court of Federal Claims] may enter appropriate sanctions if any additional filings are made in contradiction of this order."  J.A. 58.

## DISCUSSION

### I. The Court of Federal Claims Lacked Jurisdiction

Mr. Evans argues that the Court of Federal Claims had jurisdiction to hear his claims for military back pay, claims for disability retirement benefits, and challenge to the 2016 ABCMR Decision.  Appellant's Br. 14–18.[1]  After stating the applicable standard of review, we consider each contention in turn.

### A. Standard of Review

"We review a Court of Federal Claims decision to dismiss for lack of jurisdiction de novo," and "[t]he [appellant] bears the burden of establishing jurisdiction by a preponderance of the evidence." *Diaz v. United States*, 853 F.3d 1355, 1357 (Fed. Cir. 2017) (citation omitted). We review jurisdictional findings of fact for clear error. *See Banks v. United States*, 314 F.3d 1304, 1308 (Fed. Cir. 2003).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm convic-

---

[1]   Mr. Evans does not challenge on appeal the Court of Federal Claims' determination regarding his claim for VA benefits.  *See generally* Appellant's Br.

tion that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## B. Military Back Pay

The Court of Federal Claims found it lacked jurisdiction over Mr. Evans's claim for military back pay because the relevant six-year statute of limitations had run over fifty years prior. *See* J.A. 3. Mr. Evans, however, argues he is entitled to military back pay under 28 U.S.C. § 1491(a)(1)[2] ("the Tucker Act") because the Army "breached" its "express contract" between himself and the Army as a result of what he considers an improper "handling" of his "less than honorable discharge" in 1960. Appellant's Br. 13. He asserts that the Court of Federal Claims possessed jurisdiction to hear his back pay claim because it "identif[ies] a substantive right for money damages separate from the Tucker Act." *Id.* at 12; *see id.* at 12–18 (presenting no source of substantive law upon which to base his back pay claim other than the Tucker Act); Reply Br. 6 (citing 37 U.S.C. § 204 (2013) ("the Military Pay Act") following a mention of Mr. Evans's claim for military back pay). We disagree with Mr. Evans.

"In a military discharge case, this court and the Court of [Federal] Claims have long held that the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). Furthermore, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is

---

[2]    Section 1491(a)(1) states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States."

filed within six years after such claim first accrues." 28 U.S.C. § 2501; *see John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1354 (Fed. Cir. 2006) ("The six-year statute of limitations set forth in [§] 2501 is a jurisdictional requirement for a suit in the Court of Federal Claims." (citation omitted)).

Mr. Evans's military back pay claim is barred by the six-year statute of limitations. *See* 28 U.S.C. § 2501; *see also* 37 U.S.C. § 204 (stating the conditions under which a service member is entitled to payment). The relevant date for jurisdictional purposes is April 21, 1960, the day Mr. Evans was discharged. Suppl. App. 3 (documenting the discharge date in U.S. Army Service Record). For decades, he has repeatedly petitioned the ADRB and ABCMR for a discharge upgrade to honorable discharge, but never sought back pay until the June 20, 2016 Complaint filed with the Court of Federal Claims. *See* J.A. 2–3. However, the statute of limitations for the Court of Federal Claims has run; Mr. Evans seeks remuneration over fifty years too late. *See* 28 U.S.C. § 2501. He offers no additional evidence or arguments for why the Court of Federal Claims has jurisdiction in 2016 to consider his military back pay claim, *see* Appellant's Br. 15–17 (challenging the Court of Federal Claims' statute of limitations finding only with respect to the claim for disability retirement, and not for back pay), and we find none.

## C. Disability Retirement Benefits

The Court of Federal Claims found that it lacked jurisdiction to consider Mr. Evans's claim for disability retirement benefits because he had not previously submitted any such claim to a military board competent to conduct initial review, which is a necessary prerequisite to Court of Federal Claims jurisdiction. J.A. 3. Mr. Evans argues that the Court of Federal Claims erred because "[e]ven though the [disability retirement] claim was not formally requested at the [ABCMR,] it was an

implied claim and the [ABCMR] could have awarded damages on [its] own if the [discharge upgrade] was granted." Appellant's Br. 17; *see id.* ("Since the [ABCMR] vehemently opposed his upgrade for unclear reasons, requesting disability [retirement] compensation would have been denied. The fact that the claim was not raised to the [ABCMR] specifically should not affect . . . appeal to the Court [of Federal Claims]."). We disagree with Mr. Evans.

"[Military d]isability retirement cases . . . are governed by 10 U.S.C. § 1201 [(2012)]." *Chambers v. United States*, 417 F.3d 1218, 1224 (Fed. Cir. 2005); *see* 10 U.S.C. § 1201(b) (mandating the requirements for disability retirement benefits, such as "the disability is of a permanent nature and stable," and "the disability is not the result of the member's intentional misconduct or willful neglect"). As *Chambers* explained,

> in the context of [§] 1201, Congress has entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act.

417 F.3d at 1224 (internal quotation marks, citation, and alterations omitted); *see Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) ("The generally accepted rule is that claims of entitlement to disability retirement pay do not accrue until the appropriate board either finally denies such a claim or refuses to hear it."). That is,

> [t]he decision by the first statutorily authorized board which hears or refuses to hear the claim is the triggering event. If at the time of discharge an appropriate board was requested by the service member and the request was refused or if the board heard the service member's claim but denied it, the limitations period begins to run upon

> discharge. . . . A subsequent petition to the corrections board does not toll the running of the limitations period, . . . nor does a new claim accrue upon denial of the petition by the corrections board. However, where the [c]orrection [b]oard is not a reviewing tribunal but is the first board to consider or determine finally the claimant's eligibility for disability retirement, the single cause of action accrues upon the [c]orrection [b]oard's final decision.

*Real*, 906 F.2d at 1560 (internal quotation marks and citations omitted).

The Court of Federal Claims lacked jurisdiction to consider Mr. Evans's claim for military disability retirement benefits because he never submitted an initial request for such benefits to a competent military board. *See* Suppl. App. 43–195 (U.S. Army Records Packets); Appellant's Br. 17 (admitting that no disability retirement submission was made to a competent military board). Rather, Mr. Evans simply repeatedly sought a discharge upgrade. *See, e.g.,* Suppl. App. 43–47, 61–62, 76–77, 81–82, 98–99, 108, 117–18, 135–37. In addition, his contention that submission of a disability retirement claim to the ABCMR was "implied" is unpersuasive. *See* Appellant's Br. 17. We are unaware of any law or regulation authorizing or articulating the definition of an implied submission for benefits, and Mr. Evans offers none. *See generally id.* Accordingly, absent initial consideration of a request for disability retirement benefits by a competent military board, the Court of Federal Claims is unable to entertain such a claim. *See Chambers*, 417 F.3d at 1225 ("[T]he Court of Federal Claims has no jurisdiction over disability retirement claims until a military board

evaluates a service member's entitlement to such retirement in the first instance.").[3]

### D. The ABCMR's Denial of Discharge Upgrade

The Court of Federal Claims found that it lacked jurisdiction to consider Mr. Evans's challenge to the 2016 ABCMR Decision denying his request for a discharge upgrade because the request did not entail a "money-mandating action," as required by the Tucker Act. J.A. 3 (citing 28 U.S.C. § 1491(a)(1)). Mr. Evans argues that the Court of Federal Claims had jurisdiction to hear his discharge upgrade denial claim under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706, 1305, 3105, 3344, 4301, 5335, 5372, 7521 (2012), which he alleges allows the Court of Federal Claims to "set aside an agency action that is arbitrary, capricious, an abuse of discretion[,] or contrary to law or regulation." Appellant's Br. 17 (citing 5 U.S.C. §§ 702–706). We disagree with Mr. Evans.

The jurisdiction of the Court of Federal Claims is dictated by the Tucker Act. *See* 28 U.S.C. § 1491(a)(1) (granting the Court of Federal Claims jurisdiction over

---

[3]    Should Mr. Evans file a disability retirement claim with a competent military board in order to thereby gain Court of Federal Claims jurisdiction over any potential subsequent complaint, his claim may still be time-barred. Pursuant to *Chambers*,

> [a] service member's failure to request a hearing board prior to discharge . . . can invoke the statute of limitations when the service member has sufficient actual or constructive notice of his disability, and hence, of his entitlement to disability retirement pay, at the time of discharge.

417 F.3d at 1226 (internal quotation marks and citations omitted).

certain claims against the United States); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part) ("It is hornbook law that the Tucker Act . . . confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States."). Pursuant to the Tucker Act, an action may be maintained in the Court of Federal Claims if it is, inter alia, "founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, the Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, "[i]n order to invoke jurisdiction under the Tucker Act, a plaintiff must point to a substantive right to money damages against the United States." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995). That is, "[a] plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). In *United States v. White Mountain Apache Tribe*, the Supreme Court clarified that

> [i]t is enough . . . that a statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages. While the premise to a Tucker Act claim will not be lightly inferred, . . . a fair inference will do.

537 U.S. 465, 473 (2003) (internal quotation marks and citations omitted); *see United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) ("[T]he claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." (internal quotation marks and citations omitted)).

The Court of Federal Claims lacked jurisdiction to hear Mr. Evans's challenge to the 2016 ABCMR Decision because a discharge upgrade is not money-mandating. We have held that "[the Tucker Act] gives the [Court of Federal Claims] power to order the correction of military records *only incident of and collateral to* its award of a money judgment." *Voge v. United States*, 844 F.2d 776, 781 (Fed. Cir. 1988) (emphasis added) (internal quotation marks omitted). Whereas § 1201 "is money-mandating because when the requirements of the statute are met . . . [,] the member is entitled to compensation," *Fisher*, 402 F.3d at 1175 (en banc in relevant part), no such entitlement springs from a discharge upgrade, *see Voge*, 844 F.2d at 781. Moreover, because we agree the Court of Federal Claims lacked jurisdiction over Mr. Evans's other claims involving money-mandating statutes, *see supra* Section I.B–C, his discharge upgrade claim is not "incident of and collateral to," *Voge*, 844 F.2d at 781, any "money-mandating constitutional provision, statute, or regulation," *James*, 159 F.3d at 580. The APA does not extend the jurisdiction of the Court of Federal Claims and is not a money-mandating source of law. *See Wopsock v. Natchees*, 454 F.3d 1327, 1333 (Fed. Cir. 2006) ("[T]he APA does not authorize an award of money damages at all; to the contrary, . . . § 702[] specifically limits the Act to actions 'seeking relief other than money damages.'"). Thus, Mr. Evans's discharge upgrade claim cannot be entertained.

## II. The Court of Federal Claims Did Not Abuse Its Discretion When It Denied Mr. Evans's Post-Judgment Motions and Precluded Further Filing

Mr. Evans claims that the Court of Federal Claims erred when it denied the Post-Judgment Motions, precluded him from further filings (save for a notice of appeal), and threatened him with sanctions if he violated this preclusion. *See* Appellant's Br. 10, 18; J.A. 55–58

(Orders on Appeal). We present the standard of review and then consider each argument in turn.

## A. Standard of Review

We review the Court of Federal Claims' denial of the Post-Judgment Motions, its preclusion of filings, and its threat of sanctions for an abuse of discretion. *See 1-10 Indus. Assocs., L.L.C. v. United States*, 528 F.3d 859, 867 (Fed. Cir. 2008) ("We review an order imposing sanctions under the abuse of discretion standard." (citation omitted)); *Mass. Bay Transp. Auth. v. United States*, 254 F.3d 1367, 1378 (Fed. Cir. 2001) ("[We] review[] the Court of Federal Claims' denial of [Appellant's] motion to modify/reconsider for abuse of discretion." (citations omitted)). "An abuse of discretion occurs when a court misunderstands or misapplies the relevant law or makes clearly erroneous findings of fact." *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1379 (Fed. Cir. 2007).

## B. The Post-Judgment Motions

In his Post-Judgment Motions, Mr. Evans alleged, under Rules 59 and 60 of the Rules of the Court of Federal Claims ("RCFC"), that the Court of Federal Claims mischaracterized the Complaint and the case in its May 31 Order and therefore addressed the wrong matter. *See* First Mot. for Recons. 2–4 (contending, inter alia, that the May 31 Order both relied upon an incorrect page length of the Complaint and found that Mr. Evans's claims lacked case support, and that "these factors indicate there was an error in identifying the case to be dismissed"); Second Mot. for Recons. 2–4 (similar); Third Mot. for Recons. 2–4 (similar); Mot. to Alter or Amend 1–3 (similar); *see also* RCFC 59 (governing when a court may reconsider its ruling or modify a judgment or order); RCFC 60 (governing when a court may grant relief from a judgment or order). Mr. Evans argued that these errors warranted reconsideration of his case or relief from the Order dismissing it for lack of jurisdiction. *See, e.g.*, First Mot for

Recons. (requesting that the Court of Federal Claims reconsider and reverse the dismissal or grant Mr. Evans relief from the May 31 Order).

In its June 5 Order, the Court of Federal Claims first clarified the relevant rule at issue, such that "[Mr. Evans] alleges clerical error or mistake under RCFC 60 (b)(1)." J.A. 55; *see* RCFC 60(b)(1) (stating that relief from an "order" may be granted due to "mistake, inadvertence, surprise, or excusable neglect"). The Court of Federal Claims then detailed how it had referenced and accurately characterized the correct case filing date and Complaint page length in the original May 31 Order. *See* J.A. 55 (explaining how the Complaint attached "exhibits so that the document was 155 pages in length"). Mr. Evans's subsequent motions for reconsideration and Motion to Alter or Amend the Judgment put forth arguments identical to those in his First Motion for Reconsideration. *See* Second Mot. for Recons. 2–4; Third Mot. for Recons. 2–4; Mot. to Alter or Amend 1–3. In due course, the Court of Federal Claims denied the Second Motion for Reconsideration, J.A. 56, denied the Third Motion for Reconsideration and precluded Mr. Evans "from filing any further motions for reconsideration," J.A. 57, and denied the Motion to Alter or Amend and precluded Mr. Evans "from filing any further motions of any kind except, if he intends to do so, a [n]otice of [a]ppeal," J.A. 58. In the final denial, the Court of Federal Claims also stated that it "may enter appropriate sanctions if any additional filings are made in contradiction of this order." J.A. 58. Mr. Evans argues that the Court of Federal Claims' actions violated "his [c]onstitutional due process rights." Appellant's Br. 18. We disagree.

The Court of Federal Claims did not abuse its discretion because its actions were proper applications of the RCFC and fell within its broad discretion to manage its courtroom and cases. Under RCFC Rule 59, the Court of Federal Claims may reconsider its ruling or modify it for

any reason previously relied on for similar action by a federal court or "upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC Rule 59(a)(1). Under RCFC Rule 60, the lower court may grant relief from an order due to "mistake, inadvertence, surprise, or inexcusable neglect." RCFC Rule 60(b)(1). The Post-Judgment Motions do not raise issues meriting reconsideration of or relief from the original May 31 Order or its modification. Given Mr. Evans's primary contentions were that the Court of Federal Claims misstated the page length and filing date of the Complaint, *see, e.g.*, First Mot. for Recons. 2–4, the Court of Federal Claims correctly interpreted the Post-Judgment Motions to be alleging at most clerical errors and supported its denial of said allegations with evidence of record, *see* J.A. 55. Therefore, the Court of Federal Claims did not abuse its discretion, much less violate any of Mr. Evans's constitutional rights, by denying this motion and subsequent ones that raised identical, frivolous allegations.

C. Preclusion of Further Filing and Threatened Sanctions

Given the repetitious contentions of Mr. Evans's filings, the Court of Federal Claims did not abuse its discretion, or violate any of Mr. Evans's constitutional rights, by precluding further submissions and threatening sanctions should this preclusion be flouted. In *Chambers v. NASCO, Inc.*, the Supreme Court stated that

> certain implied powers must necessarily result to our [c]ourts of justice from the nature of their institution, powers which cannot be dispensed with in a [c]ourt, because they are necessary to the exercise of all others. For this reason, [c]ourts of justice are universally acknowledged to be vested . . . with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates. These powers are gov-

erned not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

501 U.S. 32, 43 (1991) (internal quotation marks and citations omitted). Furthermore, in relevant part, Rule 11(b) of the RCFC states that all representations made to the Court of Federal Claims may not be, inter alia, "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or "by a nonfrivolous argument," RCFC 11(b)(1)–(2), and must "have evidentiary support," RCFC 11(b)(3). In turn, RCFC 11(c) authorizes the Court of Federal Claims to "impose an appropriate sanction on any . . . party" that submits a motion with content contrary to the certifications made pursuant to RCFC 11(b). After responding to the claims of Mr. Evans's First Motion for Reconsideration, *see* J.A. 55, it was well within the Court of Federal Claims' discretion to preclude Mr. Evans from making further filings and to threaten sanctions when he continued submitting material containing substantially the same allegations.

## CONCLUSION

We have considered Mr. Evans's remaining arguments and find them unpersuasive. Accordingly, the Orders on Appeal of the U.S. Court of Federal Claims are

**AFFIRMED**