**N. Jerome WILLINGHAM, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 94–519C.

United States Court of Federal Claims.

June 6, 1996.

N. Jerome Willingham, pro se plaintiff, Jacksonville, North Carolina.

Salomon Gomez, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were David M. Cohen, Director, and the Assistant Attorney General, attorneys of record for defendant.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion to dismiss and the parties' cross-motions for summary judgment. Defendant's motion to dismiss was filed pursuant to Rule 12(b) of the Rules of the United States Court of Federal Claims (RCFC), and the cross-motions for summary judgment were filed pursuant to RCFC 56.1.

The *pro se* plaintiff, N. Jerome Willingham,[1] initially filed this action for compensatory and injunctive relief, pursuant to 37 U.S.C. § 101 *et seq.* (1988), claiming that the defendant, the United States, acting through the Department of the Navy, wrongfully denied plaintiff compensation subsequent to his allegedly unlawful discharge from the United States Marine Corps Reserve. Plaintiff's complaint, as originally filed before this

---

1. Although the plaintiff in this case is proceeding *pro se,* Mr. Willingham acknowledged at the oral argument that he is a licensed attorney, who is a member of the bar of the District of Columbia.

court, asked for the following: (1) injunctive relief mandating that the defendant reinstate plaintiff to active duty in the United States Marine Corps Reserve with the rank of Captain; (2) compensatory relief based on pay in the amount of $3,735.56 per month, less appropriate deductions, or the sum of back pay and allowances to which plaintiff allegedly is entitled, from his last pay day until he is reinstated; and (3) compensation for the purchase of uniforms.

In response to plaintiff's complaint, defendant filed a motion to dismiss or, in the alternative, for summary judgment. Defendant's motion to dismiss is predicated on the theory that the plaintiff's claim is not justiciable in this court. Defendant's motion for summary judgment asserts that the decision to discharge the plaintiff was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Although, in the papers he filed in this court, plaintiff asserts that the case, as filed, presents a justiciable controversy, he offers minimal discussion on the issue. Plaintiff Willingham devotes by far the majority of his attention to his motion for summary judgment, which is predicated on the theory that defendant's decision to discharge plaintiff "was arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Furthermore, plaintiff argues that he should be granted summary judgment because defendant's discharge of plaintiff constituted a breach of contract.

At the oral argument, however, plaintiff substantially revised his request for relief by stating that he only was seeking back pay from July 21, 1994 through September 9, 1994, and was requesting reinstatement into active duty service, solely for the purpose of checking out of the armed services, in what he considers to be a proper fashion. Plaintiff also dropped his claim for compensation for the purchase of uniforms.[2] At the oral argument, the following exchange occurred between the court and the plaintiff:

THE COURT: If you were to get everything that you wanted out of this case, what would you get? Just list it for me.

MR. WILLINGHAM: The pay through the ninth of September.

THE COURT: So pay from July 21 to September 9, 1994, right?

MR. WILLINGHAM: That's correct.

THE COURT: Anything else?

MR. WILLINGHAM: The reinstatement for the purposes of checking out properly.

The court, therefore, will review plaintiff's claims on the basis of plaintiff's request, as revised at the oral argument, by which he seeks only monetary compensation and no longer seeks permanent reinstatement into active duty status.

### FACTS

Plaintiff, N. Jerome Willingham, enlisted and entered active duty in the United States Marine Corps on July 7, 1984. Mr. Willingham's service agreement for the Officer Candidate Class (Law) Program stated that he would serve for at least eight years in the United States Marine Corps Reserve from the date of his appointment to commissioned grade. Plaintiff was commissioned as an officer in the United States Marine Corps Reserve on December 14, 1984. He was subsequently trained and served as a Judge Advocate on active duty until December 1, 1987, at which time he was honorably discharged from active duty in the United States Marine Corps. Upon release from active duty, plaintiff was placed in the Individual Ready Reserve Program.

In July 1993, the United States Marine Corps established the "Fiscal Year 1993 Marine Corps Reserve Officer Mobilization Potential Screening Board" ("MPSB"). The MPSB was established pursuant to 10 U.S.C. § 271 (1988), and requires each of the armed forces to "provide a system of continuous screening of units and members of the Ready Reserve . . . ." In compliance with that statute, the Secretary of the Navy issued Secre-

---

**2.** In accordance with plaintiff's statements at the oral argument, the court dismissed the claim for the cost of uniforms, with prejudice, in a written order dated February 23, 1996. On April 2, 1996, plaintiff filed an amended complaint, which stated in its entirety: "Plaintiff hereby drops and dismisses with prejudice his claim for reimbursement for uniforms."

tary of the Navy Instruction ("SECNA-VINST") 1920.6A on November 21, 1983. Paragraph 12 of enclosure 3 of SECNA-VINST 1920.6A lists nine (9) separate grounds by which the Secretary of the Navy may separate Reserve officers not on active duty. Included as a category of possible separation are Reserve officers who have earned less than twenty-seven (27) retirement credit points per anniversary year. Each member of the Reserves accumulates fifteen (15) points yearly by virtue of being in the Reserves. The remaining points can be accumulated by the member's participation in activities such as correspondence courses, drilling units, and active duty for training. In 1991, Mr. Willingham did not accumulate the required number of retirement credit points. In fact, in 1991, he accumulated only one (1) additional retirement point for one (1) day of active duty, for a total of sixteen (16) points for that year.

At the oral argument, plaintiff stated that he made a choice not to complete the twenty-seven (27) hours necessary to remain on active duty in the Reserves, and, therefore, he agreed that he was eligible for separation. Further, plaintiff conceded that he failed to communicate his position to the MPSB at any time and chose not to appear before the MPSB at his scheduled hearing, or at any other time, to contest his separation. The following colloquy occurred at the oral argument:

THE COURT: ... Did you or did you not have contact with the Board? Did you dialogue with the Board? Did you respond to the Board? Did you keep them posted of your situation or not? You are [an] attorney. You have told me that.

MR. WILLINGHAM: That is correct.

THE COURT: You went into the service as an attorney. Attorneys are generally not shy [or] retiring [or] waiting for somebody to call them up and know what it means to be in a dialogue with a Board, especially one that is going to separate you or potentially separate you, at least has the power to separate you.

Did you respond to them at all? Did you appear in front of them either by letter or in person in any way? What contact did you have with the Board?

MR. WILLINGHAM: Your Honor, it is included in my statement of facts that I had other obligations and I was not—it was okay with me if the Screening Board found that I hadn't completed the hours.

THE COURT: Well but you—

MR. WILLINGHAM: That is not—

THE COURT:—knew that not completing the hours was grounds for separation?

MR. WILLINGHAM: Certainly.

THE COURT: Okay.

MR. WILLINGHAM: Yes.

THE COURT: Now what other obligations did you have that were so overwhelming that you couldn't have communicated with the Board?

MR. WILLINGHAM: I chose—it was up to me when I served on active duty. I could have taken courses that would have qualified for the hours.

THE COURT: Right.

MR. WILLINGHAM: I chose not to do that. I am not challenging directly what the Board did. If I had not been on active duty, Your Honor, the Board's action would have been fine.

THE COURT: Okay. So you are saying to me that the Board[']s finding that you hadn't completed the 27 hours a year and that you were eligible for separation is not something you are challenging?

MR. WILLINGHAM: If I may, Your Honor.

THE COURT: Answer my question, yes or no.

MR. WILLINGHAM: No, Your Honor.

THE COURT: So you are not challenging the Board[']s finding that you completed less than 27 hours and therefore were eligible for separation.

MR. WILLINGHAM: No, no question.

*   *   *   *   *   *

THE COURT: ... Tell me why you didn't take part in any of the exercises. You said you just didn't—you chose not to gather up your 27 points. Why is that?

MR. WILLINGHAM: I was a practicing attorney. I was involved in litigation against the commanding general of employment discrimination cases. We won, I think, everyone of them. I did not want the conflict of litigating against the commanding general and then serving under his command.[3]

On June 1, 1993, the Commandant of the Marine Corps prepared a precept to convene the MPSB. The precept was signed by the Secretary of the Navy and directed Major General John F. Cronin, United States Marine Corps Reserve, to convene the MPSB and screen officers in the Individual Ready Reserve and Standby Reserve for potential and availability for mobilization to active duty. On July 30, 1993, the Marine Corps Reserve Support Command ("MCRSC") notified the plaintiff that the MPSB would be reviewing his service record and would make recommendations regarding his retention in the United States Marine Corps Reserve. Plaintiff was notified of his options should he wish to challenge the Board proceedings, including that officers being screened by the MPSB may submit a statement to the Board, confer with counsel, and request copies of the papers sent to the Secretary of the Navy supporting the proposed separation. The notice sent to plaintiff on July 30th read as follows:

UNITED STATES MARINE CORPS
MARINE CORPS RESERVE SUPPORT
COMMAND
10950 EL MONTE
OVERLAND PARK, KS 66211–1408

001

PMD–IF

30 JUL 93

FROM: COMMANDING GENERAL, MARINE CORPS RESERVE SUPPORT

TO: CAPT NATHANIEL J. WILLINGHAM

31 KERR STREET

JACKSONVILLE, NC 285400000

SUBJ: FISCAL YEAR 1993 MARINE CORPS RESERVE OFFICER MOBILIZATION POTENTIAL SCREENING BOARD

1. THE SECRETARY OF THE NAVY HAS APPOINTED A BOARD TO SCREEN CERTAIN RESERVE OFFICERS FOR THEIR POTENTIAL AND AVAILABILITY FOR MOBILIZATION. THE SCREENED POPULATION IS LIMITED TO THOSE OF THE INDIVIDUAL READY RESERVE (IRR) AND THE STANDBY RESERVE. AMONG THOSE THE BOARD WILL SCREEN ARE OFFICERS WHO:

A. HAVE BEEN ON THE INACTIVE STATUS LIST (ISL), STANDBY RESERVE FOR AT LEAST 3 YEARS.

B. HAVE BEEN IDENTIFIED BY THE CHIEF, BUREAU OF MEDICINE AND SURGERY WHO ARE:

(1) NOT PHYSICALLY QUALIFIED FOR ACTIVE DUTY OR RETENTION IN THE MARINE CORPS RESERVE AND WHO HAVE FAILED TO REQUEST A FULL AND FAIR HEARING BEFORE A PHYSICAL EVALUATION BOARD.

(2) MILITARILY UNFIT OR UNSUITABLE AS A RESULT OF A MEDICAL FINDING NOT CONSTITUTING PHYSICAL DISABILITY.

C. FAIL TO UNDERGO A PHYSICAL EXAMINATION AS REQUIRED BY CURRENT REGULATIONS.

D. FAIL TO KEEP US INFORMED OF THEIR CURRENT MAILING ADDRESS.

E. FAIL TO RESPOND, OR COMPLY WITH, OFFICIAL CORRESPONDENCE WITHIN A REASONABLE PERIOD OF TIME.

F. DECLINE TO ACCEPT A PERMANENT APPOINTMENT TO THE NEXT HIGHER GRADE WITHIN 6 MONTHS OF RECEIPT OF THE COMMISSION.

---

**3.** The transcript of the oral argument is replete with transcription errors which do not change the meaning of the statements made, but which make the dialogues more difficult to follow.

G. EARN LESS THAT 27 RETIREMENT POINTS (INCLUDING MEMBERSHIP POINTS) PER ANNIVERSARY YEAR.

2. THE BOARD IS TENATIVELY [SIC] SCHEDULED TO CONVENE 11 SEPTEMBER 1993 AND EXAMINE INDIVIDUAL RECORDS, INCLUDING YOURS.

3. THE BOARD WILL MAKE THEIR RECOMMENDATIONS FOR RETENTION OR SEPARATION TO THE SECRETARY OF THE NAVY. IN THE MEANTIME YOU HAVE THE FOLLOWING OPTIONS:

A. IF ELIGIBLE, YOU MAY REQUEST TRANSFER TO THE RETIRED RESERVE.

B. YOU MAY REQUEST TRANSFER TO, OR RETENTION IN, THE ISL. THIS OPTION WILL REQUIRE SUBSTANTIAL JUSTIFICATION.

C. YOU MAY REQUEST RESIGNATION.

D. IF ELIGIBLE, YOU MAY RESUME ACTIVE PARTICIPATION IN A RESERVE PROGRAM.

E. YOU MAY APPEAR IN PERSON, BE REPRESENTED BEFORE THE BOARD, OR SUBMIT A WRITTEN STATEMENT TO BE CONSIDERED BY THE BOARD.

4. PLEASE NOTIFY US [SIC] OF YOUR INTENTIONS NOT LATER THAN 10 DAYS AFTER YOU RECEIVE THIS LETTER. YOUR FAILURE TO RESPOND WILL CONSTITUTE A WAIVER OF ALL RIGHTS UNDER THESE PROCEEDINGS.

5. PLEASE ADVISE US ASAP IF YOU HAVE JOINED OR HAVE PENDING AN APPLICATION TO JOIN A SELECTED MARINE CORPS RESERVE UNIT OR AN INDIVIDUAL MOBILIZATION AUGMENTATION DETACHMENT.

6. IF YOU FEEL YOU SHOULD NOT BE CONSIDERED BY THIS BOARD, PLEASE NOTIFY US IMMEDIATELY.

7. IF YOU HAVE ANY QUESTIONS, PLEASE WRITE.

C.E. LONGSHORE
BY DIRECTION

Plaintiff received this notification on August 16, 1993, by certified mail. Despite the options provided to the plaintiff, he did not attend the MPSB hearing personally and chose not to be represented at the hearing. Furthermore, plaintiff did not submit a written statement to the MPSB. On September 11, 1993, the MPSB met and recommended separation for a number of Reserve officers, including plaintiff Willingham. The MPSB's recommendations to the Secretary of the Navy were not released, pending final approval or disapproval by the Secretary of the Navy.

While the MPSB's recommendations to the Secretary of the Navy were pending, plaintiff agreed to be recalled for a limited period of active duty as a Reservist from June 20, 1994 through September 9, 1994, a period of eighty-two (82) days. Plaintiff received active duty orders, reported on June 20, 1994, and began carrying out his assigned tasks.

Meanwhile, the MPSB recommendations were internally reviewed and forwarded to the Secretary of the Navy, who approved them on June 28, 1994. The Assistant Secretary of the Navy for Manpower and Reserve Affairs signed the discharge certificates, including that of the plaintiff. Mr. Willingham's discharge certificate was dated June 28, 1994, and was signed by Frederick F.Y. Pang, Assistant Secretary of the Navy for Manpower and Reserve Affairs. After receiving plaintiff's discharge certificate, MCRSC notified Mr. Willingham that he was being discharged and mailed his discharge certificate to his home of record. Plaintiff also was orally notified of his discharge on July 20, 1994, by Captain Linda Summers (United States Marine Corps, MCRSC),[4] and was directed to return to his administrative section to begin checking out. Plaintiff received a faxed copy of his Honorable Discharge papers on July 21, 1994, and was mailed a copy of those papers on August 18, 1994, and again on August 24, 1994. More-

---

**4.** Captain Summers is referred to as "Captain Linda Lammers" by defendant.

over, plaintiff admitted in "plaintiff's proposed additional facts" filed with this court that he received a copy of the discharge certificate on or about August 29, 1994.

Subsequently, plaintiff received another discharge certificate, dated January 31, 1995. This latest discharge certificate was generated by defendant to correct an error in failing to remove plaintiff's name from a computer database containing the records of all active duty and reserve marines. Because of this error, plaintiff's name was again sent to the United States Marine Corps office responsible for separating reserve personnel from the military. This time, plaintiff's name was removed from the database and he was sent another discharge certificate signed by Lieutenant General G.R. Christmas, Deputy Chief of Staff for Manpower & Reserve Affairs. Defendant has confirmed to this court that the latest discharge certificate should not have been issued. Defendant, however, also argues that because the latest discharge was sent in error, it has no relation to the first and is not an admission that the first was sent in error.

Plaintiff initially received pay and allowances for work through July 21, 1994, the date that the United States Marine Corps officially separated him.[5] The last check plaintiff received was prepared on August 9, 1994. Without pursuing any administrative remedies which may have been available to the plaintiff, he proceeded to file his complaint in this court.

## DISCUSSION

■ When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747.

The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also State of Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 746; *Miree v. De Kalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *State of Alaska v. United States,* 32 Fed.Cl. at 695.

■ The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *State of Alaska v. United States,* 32 Fed.Cl. at 695; *Catellus Dev. Corp. v. United States,* 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981).

■ In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1988 and Supp.1993), requires that a substantive right, which is

---

**5.** Although plaintiff had been directed to leave the base immediately after receiving the faxed copy of his honorable discharge certificate on July 21, 1994, Lieutenant Colonel (at that time Major) Michael J. Stroff, III obtained permission to allow plaintiff to remain until July 25, 1994, in order for plaintiff to check out properly. Also, since the filing of plaintiff's complaint, defendant has begun the procedures necessary to have plaintiff paid for the period July 22 through July 25, 1994.

enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act merely confers jurisdiction on the Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1350–51, 63 L.Ed.2d 607 (1980) (*Mitchell I*); *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Connolly*, 716 F.2d 882, 885 (Fed. Cir.1983) (*en banc*), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan*, 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States*, 17 Cl.Ct. 475, 479 (1989), *aff'd*, 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States*, 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied*,

463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002 (1967). The court, therefore, offers the following, albeit lengthy, comprehensive selections from *Eastport Steamship Corp. v. United States*, which more fully explain the jurisdictional parameters:

Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money. Within that sphere, the non-contractual claims we consider under Section 1491 can be divided into two somewhat overlapping classes—those in which the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum; and those demands in which money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury. In the first group (where money or property has been paid or taken), the claim must assert that the value sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. In the second group, where no such payment has been made, the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum....

We have referred to these cases [the former cases] as those in which 'the Government has the citizen's money in its pocket' and the claim is 'to recover an illegal exaction made by officials of the Government, which exaction is based upon

a power supposedly conferred by a statute' [citations omitted]; and we have held that 'suit can be brought in this court to recover [such] exactions said to have been illegally imposed by federal officials (except where Congress has expressly placed jurisdiction elsewhere)' [citations omitted].

The second category includes the varied litigations in which we are urged to hold that some specific provision of law embodies a command to the United States to pay the plaintiff some money, upon proof of conditions which he is said to meet....

Monetary claims which cannot be brought within these limits are beyond this court's jurisdiction, even though they may intimately involve the Constitution, an Act of Congress, or an executive regulation. This is the reverse of saying that this court is not concerned with any and all pecuniary claims against the Federal Government, simply because they rely upon (and in that sense are 'founded upon') an aspect of federal, constitutional, statutory or regulatory law. Where the claimant is not suing for money improperly exacted or retained (the first class defined above), the historical boundaries of our competence have excluded those instances in which the basis of the federal claim—be it the Constitution, a statute, or a regulation—cannot be held to command, in itself and as correctly interpreted, the payment of money to the claimant, but in which some other principle of damages has to be invoked for recovery.... Under Section 1491 what one must always ask is whether the constitutional clause or the legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If

not, this court cannot give relief under Section 1491, although some separate general principle—arising, for example, from tort law—might lead to a remedy in another forum or under some special relief provision.

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 605–07, 372 F.2d at 1007–08 (citations omitted).

■ As a United States Marine Corps Reserve officer on active duty, plaintiff in this case was entitled to be paid under 37 U.S.C. § 204(a)(1) (1988).[6] Plaintiff alleges that he was improperly discharged from military duty on June 28, 1994, and, thus, is entitled to pay from his last date of pay, July 21, 1994, to the last date of his period of scheduled active duty, September 9, 1994.[7] In his complaint as filed, plaintiff also had asked this court to reinstate him to active duty in the United States Marine Corps Reserve with the rank of Captain. Moreover, plaintiff's original complaint took issue with the merits of plaintiff's discharge. As indicated above, however, at the oral argument, plaintiff appeared to drop his claim that he was improperly discharged and chose rather to take issue with the procedures employed by the defendant while processing his discharge. As such, plaintiff seemed to be arguing for reinstatement solely for the purpose of checking out in a fashion he considered proper, including an opportunity to receive a discharge physical.[8] Since plaintiff is contesting the procedures employed in processing his discharge and no longer is seeking reinstatement, plaintiff's allegations of improper procedures are within the jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a) (1988).

---

6. "The following persons are entitled to the basic pay of the pay grade to which assigned or distributed ... (1) a member of a uniformed service who is on active duty...." 37 U.S.C. § 204(a)(1).

7. See footnote 5, pages 9–10.

8. The court notes that plaintiff was discharged from the service in the late summer of 1994. Therefore, any physical plaintiff would receive now, several years following the date of his discharge, would form a questionable basis on which to document a service related physical

disability at the time of discharge, which injury, as is discussed below, he failed to properly report and document at the time it allegedly occurred. Moreover, defendant disputes, as also is discussed below, that plaintiff was entitled to a discharge physical at the time he was separated from the service. Consequently, assuming plaintiff is paid for the time he served between June 20, 1994 to July 25, 1994, reinstatement into the service only for the purpose of processing out in accordance with what plaintiff considers to be proper procedures would seem to be a futile exercise.

■ Although this court acknowledges that jurisdiction over plaintiff's claim is proper, in order to review the alleged procedural irregularities employed to discharge him, plaintiff must also present a claim for which this court can provide relief. As articulated by the United States Court of Appeals for the Federal Circuit, "the existence of jurisdiction does not confirm the court's ability to supply relief." *Murphy v. United States*, 993 F.2d 871, 872 (Fed.Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994). The issue also must be justiciable, which is separate and distinct from jurisdiction. *Id.* Justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Moreover, the United States Court of Appeals for the Federal Circuit has noted that "[j]usticiability is a particularly apt inquiry when one seeks review of military activities." *Murphy*, 993 F.2d at 872.

■ Traditionally, courts have been accorded deference to personnel decisions of the military and have been reluctant to interfere with the authority of the Executive in military and national security affairs. *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355. As stated repeatedly: "The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review." *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed.Cir.1995). For example, "[w]hile the courts have found occasion to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders, we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service." *Orloff v. Willoughby*, 345 U.S. 83, 94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).

■ At the same time, "[t]his court has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Adkins v. United States*, 68 F.3d at 1323. As stated in *Murphy v. United States*,

> When the military is given unlimited discretion by Congress, it is nevertheless bound to follow its own procedural regulations if it chooses to implement some. *Sargisson*, 913 F.2d at 921. But the utility of the distinction between procedural and substantive matters in assessing a court's ability to review military decisions should not be overemphasized. On procedural matters, the test or standard is inherent. A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion. The court is not called upon to exercise any discretion reserved for the military, it merely determines whether the procedures were followed by applying the facts to the statutory or regulatory standard.

*Murphy v. United States*, 993 F.2d at 873. Likewise in *Sargisson v. United States*, the court stated "[n]evertheless, once the Secretary promulgated regulations and instructions and made them the basis for [the soldier's] . . . release, his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." *Sargisson v. United States*, 913 F.2d 918, 921 (Fed.Cir.1990). The court in *Voge v. United States* offered similar guidance as follows: "It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all. . . ." *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988). Consequently, a controversy is justiciable only if it is "one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." *Voge v. United States*, 844 F.2d at 780 (quoting *Greene v. McElroy*, 254 F.2d 944, 953 (D.C.Cir.1958), *rev'd on other grounds*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)).

SECNAVINST 1920.6A, Enclosure 3, ¶ 12,[9] provides categories of officers not on active duty to be screened for possible separation. At the time the screening process was to begin regarding plaintiff's performance record, he was not on active duty with the Reserve. Moreover, when he was activated, it was for a limited tour of duty. The Navy instructions specify the steps by which the MPSB should finalize an officer's "potential and availability for mobilization to active duty." SECNAVINST 1920.6A, Enclosure 3, ¶ 12(a). In the instant case, plaintiff Willingham clearly had failed to accumulate sufficient retirement points to avoid being screened out on the basis articulated in SEC-NAVINST 1920.6A, Enclosure 3, ¶ 12(a)(9). Plaintiff himself has acknowledged on several occasions that he failed to accumulate the requisite number of credits and, therefore, was properly eligible for separation. Moreover, plaintiff has acknowledged that he failed to respond to the notice he received on July 30, 1993, informing him of the MPSB screening procedures. As a result of plaintiff's failure to respond, by the terms of the letter, he was notified that he waived further rights under those proceedings.

In his original complaint, plaintiff failed to distinguish that he was challenging the procedural process of his separation, rather than the merits of the decision to separate him. At oral argument and in subsequent filings, including his final brief submitted to the court, however, plaintiff repeatedly stated that he is not challenging the merits of the Navy's finding that he was eligible for separation, but, rather, the process by which he was separated. At the oral argument, the following exchange occurred:

> THE COURT: So you are not challenging the Board['s] finding that you completed less than 27 hours and therefore were eligible for separation.

> MR. WILLINGHAM: No, no question.

Moreover, in his cross-motion for summary judgment, plaintiff states: "Plaintiff does not contest the authority of the Defendant to separate Reservists. But the Defendant is compelled to comply with its procedures. The failure to comply with its own procedures makes the Defendant's actions arbitrary, capricious, and contrary to law."

As indicated above, this court has recognized that while the merits of a decision to discharge an individual from the armed forces is not subject to judicial review, a challenge to the particular procedures followed in reaching that decision may present a justiciable controversy. *See Adkins v. United States,* 68 F.3d at 1323; *Sargisson v. United States,* 913 F.2d at 921; *Voge v. United States,* 844 F.2d at 779. Because plaintiff in the case at bar alleges that there were procedural violations which rendered his separation invalid, and for the reasons discussed above, this court has found plaintiff's claim to be justiciable. The court, therefore, DENIES defendant's motion to dismiss and proceeds to examine the parties' cross-motions for summary judgment on the issue of whether or not the defendant adhered to its own authorities in separating plaintiff Willingham from the service.

---

9. 12. Separation of Reserve officers not on active duty for lack of mobilization potential

    a. The Secretary of the Navy shall, when necessary, convene a board to screen Reserve officers not on active duty and who have completed the obligated service referred to in paragraph 4 of enclosure (2), for their potential and availability for mobilization to active duty. Such screening will include, but is not limited to, officers in the following categories....
SECNAVINST 1920.6A, Enclosure 3, ¶ 12(a) (21 Nov 1983)

The instruction then lists nine (9) classes of officers subject to separation, including subsection (a)(9), which states as follows:

    (9) An officer who earned less than 27 retirement credit points (including membership points) per anniversary year and for whom no shortage of officers with his or her skill exists in his or her competitive category and grade. However, a Reserve officer may not be separated from the Naval or Marine Corps Reserve solely for failure to meet this standard if training during the anniversary year is denied by reason of lack of funds or facilities to provide appropriate training, or circumstances of an unusual nature, as determined by the board, or by the Chief of Naval Personnel or the Commandant of the Marine Corps on a case-by-case basis preclude the officer from attaining at least 27 Reserve Retirement Credit Points (including membership points) per anniversary year.
SECNAVINST 1920.6A, Enclosure 3, ¶ 12(a)(9) (21 Nov 1983).

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of this court is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.) and is similar in language and effect.[10] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) of the Rules of the United States Court of Federal Claims (RCFC) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Rust Communications Group v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the non moving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. at 2511; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd without op.*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Stated otherwise, if the nonmoving party cannot present the evidence to support its case under any scenario, then there should be no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Industrial Products, Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,*

---

10. In general, the rules of this court are closely patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including Rule 56.

*See Jay v. Sec'y DHHS*, 998 F.2d 979, 982 (Fed. Cir.1993); *Imperial Van Lines Int'l Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs.*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552; *Lima Surgical Assocs.*, 20 Cl.Ct. at 679.

Pursuant to Rule 56, the motion for summary judgment may succeed, whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553. Generally, however, in order to prevail, the nonmoving party will need to go beyond the pleadings, by use of evidence such as affidavits, depositions, answers to interrogatories and admissions, in order to demonstrate that a genuine issue for trial exists. *Id.*

In the above-captioned case, the fact that both the parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976); *Ishida v. United States*, 31 Fed.Cl. 280, 284 (1994). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.

1968); *Bataco Indus., Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993), *aff'd* 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc.*, 812 F.2d at 1391.

Plaintiff Willingham was separated from the United States Marine Corps Reserve pursuant to 10 U.S.C. § 271 and SECNAVINST 1920.6A. Defendant's motion for summary judgment contends that the Secretary of the Navy's actions in conducting the MPSB hearing and ultimately separating plaintiff from the Reserves were not arbitrary, capricious, or an abuse of discretion, and were supported by substantial evidence. This court agrees.

It is well settled that the responsibility for determining who is fit or unfit for military service is not a matter for the courts to decide. *Sanders v. United States*, 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979). "Strong policies compel the court to allow the widest possible latitude to the armed services in their administration of personnel matters." *Id.* (citing *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953)); *Wales v. United States*, 132 Ct.Cl. 765, 769, 130 F.Supp. 900, 903 (1955). Therefore, the task of running the military should be left to the expertise and discretion of the military. *See Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 2445, 37 L.Ed.2d 407 (1973); *Brenner v. United States*, 202 Ct.Cl. 678, 685–86, 1973 WL 21354 (1973), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).

Judicial review of administrative decisions, including military decisions, is limited. When contesting personnel actions taken by the armed forces, a plaintiff bears the burden to overcome the "strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties correctly, lawfully, and in good faith." *Hary v. United States*, 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980); *Sanders*, 219 Ct.Cl. at 302; *Guy v. United States*, 221 Ct.Cl. 427, 432–33, 608 F.2d 867, 870 (1979). Otherwise stated, it is the plaintiff's burden to demonstrate that the actions of the Navy officials

were arbitrary and capricious, contrary to law or unsupported by substantial evidence, by producing cogent and clearly convincing evidence to that effect. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121.

When reviewing the decisions of the military under the arbitrary and capricious standard, the scope of review is extremely narrow. *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974). "[T]he standard of review does not require a reweighing of the evidence, but rather, a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983). Thus, this court should "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment...." *Bowman v. Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. at 285, 95 S.Ct. at 442.

▮▮▮▮ Moreover, when the meaning of military regulations and instructions are at issue, the armed service's own interpretation must be given controlling weight and deference, especially when it has been consistently interpreted over a long period of time. *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982); *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed.Cir.1986), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986); *Cameron v. United States,* 34 Fed.Cl. 422, 431 (1995). If the applicable regulations are interpreted by the armed services in a reasonable manner, any charge of procedural irregularity must fail, even though the plaintiff may present another reasonable interpretation of the regulation. *Wronke v. Marsh,* 787 F.2d at 1573. Thus, where a military regulation is susceptible to equally reasonable constructions, a court may not substitute an alternative interpretation for that chosen by the military service. *Id.*

As articulated in the statute, by enacting 10 U.S.C. § 271, Congress required that a continuous screening process of service members in the Ready Reserve be maintained in order to ensure that a Ready Reserve force, capable of recall without significant attrition and with an appropriate balance of military skills, is available. The statute states, in pertinent part:

> Ready Reserve: continuous screening
>
> (a) Under regulations prescribed by the President, each armed force shall provide a system of continuous screening of units and members of the Ready Reserve....

10 U.S.C. § 271(a). In accordance with this statutory directive and SECNAVINST 1920.6A, the Marine Corps set up the Marine Corps Reserve Officer Mobilization Potential Screening Board (MPSB) to screen the records, including those of plaintiff Willingham, for possible separation. SECNAVINST 1920.6A, Enclosure 3, ¶ 12, describes the criteria for separation of Reserve officers. The relevant subsection pertaining to the plaintiff in this case reads as follows:

> An officer who earned less than 27 credit points (including membership points) per anniversary year and for whom no shortage of officers with his or her skill exists in his or her competitive category and grade. However, a Reserve officer may not be separated from the Naval or Marine Corps Reserve solely for failure to meet this standard if training during the anniversary year is denied by reason of lack of funds or facilities to provide appropriate training, or circumstances of an unusual nature, as determined by the board, or by the Chief of Naval Personnel or the Commandant of the Marine Corps on a case-by-case basis preclude the officer from attaining at least 27 Reserve Retirement Credit Points (including membership points) per anniversary year.

SECNAVINST 1920.6A, Enclosure 3, ¶ 12(a)(9).

In accordance with the statutory guidelines, as well as its own regulatory and procedural framework, the Corps determined through the screening process that plaintiff Willingham had not accumulated the required number of annual retirement points and took steps to discharge him. It has been established that plaintiff in this case does not dispute the determination by the Corps that

he failed to accrue the 27 necessary credit points. Therefore, the determination of his eligibility for separation was correct. Mr. Willingham, however, alleges several administrative and procedural errors undertaken by the Corps as part of the process by which he was separated.

Plaintiff first alleges that the Corps violated either 10 U.S.C. § 1168(a) (1988) or 32 C.F.R. § 45.3(b)(1) (1994). This statute and regulation deal with the delivery and receipt of a service member's discharge certificate (otherwise known as a "DD Form 214"), prior to discharge. The statutory authority cited by the plaintiff, in pertinent part, states as follows:

> § 1168. Discharge or release from active duty: limitations
>
> (a) A member of an armed force may not be discharged or released from active duty until his discharge certificate or certificate of release from active duty, respectively, and his final pay or a substantial part of that pay, are ready for delivery to him or his next of kin or legal representative.

10 U.S.C. § 1168(a).

> § 45.3 Policy and procedures
>
> (b)(1) *Release or discharge from active service.* (i) The original of DD Form 214 showing separation from a period of active service with a Military Service, including release from a status that is legally determined to be void, will be physically delivered to the separate prior to departure from the separation activity on the effective date of separation; or on the date authorized travel time commences.

32 C.F.R. § 45.3(b)(1).

Plaintiff, however, should not have ignored a subsequent provision of 32 C.F.R. § 45.3(b), which states as follows:

> (b)(2) *Release from active duty for training, full-time training duty, or active duty for special work.* Personnel being separated from a period of active duty for training, full-time training duty, or active duty for special work will be furnished a DD Form 214 when they have served 90 days or more, or when required by the Secretary concerned for shorter periods. Personnel shall be furnished a DD Form 214 upon separation for cause or for physical disability regardless of the length of time served on active duty.

32 C.F.R. § 45.3(b)(2).

Section 45.3(b)(2) of Chapter 32 of the Code of Federal Regulations specifically states that a certificate of release or discharge from active duty for training, full-time training duty, or active duty for special work (DD Form 214) only will be furnished to a service member when that service member has served at least ninety (90) days of active duty, or when required by the Secretary for shorter periods.[11] Plaintiff, in fact, served fewer than ninety (90) days of active duty as a Reservist. Plaintiff's actual period of active duty service was from June 20, 1994 through July 25, 1994 (thirty-five (35) days). Moreover, plaintiff's scheduled tour of active duty as a Reservist was only for eighty-two (82) days. Plaintiff's discharge certificate was, in fact, "ready for delivery" to Mr. Willingham prior to when he left the base on July 25, 1994, as required by 10 U.S.C. § 1168(a), since the discharge was signed and effective as of June 28, 1994. Furthermore, plaintiff knew of the decision to discharge him on July 20, 1994, when Captain Linda Summers told him of his discharge. In fact, Mr. Willingham conceded in his statement of facts that he was on notice of his discharge as of July 20, 1994. This court has previously held that a service member is not entitled to additional pay simply because he has not yet received a discharge certificate, if the service member was aware of and on notice of the discharge. *See Wilkinson v. United States,* 27 Fed.Cl. 180, 181 (1992); *Hamon v. United States,* 10 Cl.Ct. 681, 683 (1986).

Plaintiff also contends that Marine Corps Order (MCO) 1900.1J precludes his separation from active duty because he suffered from a back injury on June 21, 1994, and through the remainder of his active duty status. Plaintiff's interpretation of MCO

---

**11.** Plaintiff does not claim or cite to the existence of any other special requirement by which the Marines were under an obligation to furnish plaintiff with a notice of discharge.

1900.1J is incorrect. MCO 1900.1J governs only certain categories of Reserve officers, as are set forth in paragraph three (3) of the regulation. After review of MCO 1900.1J, this court concludes that plaintiff Willingham does not fall into any of the categories discussed in the MCO. Moreover, plaintiff was unable to cite to any evidence to support his claim of a back injury when questioned at the oral argument, and no supporting evidence of a back injury was supplied in the record provided to the court. At oral argument, the following colloquy occurred:

THE COURT: All right. The back injury occurred when?

MR. WILLINGHAM: A week earlier than—

THE COURT: When? What date?

MR. WILLINGHAM: I don't have the date.

THE COURT: Well you need to tell me because that is critical here. When did the back injury occur?

MR. WILLINGHAM: The Wednesday prior to—

THE COURT: Give me a date. Wednesday prior to what?

MR. WILLINGHAM: The 21st.

THE COURT: So what day was the 21st?

MR. WILLINGHAM: It was the PFT that we ran.

THE COURT: What was the 21st? I need a date. I can't do this in the abstract.

MR. WILLINGHAM: I don't have a calendar, Your Honor.

THE COURT: What kind of day was July 21st, do we know? You say it was a PFT that you ran. What is a PFT?

MR. WILLINGHAM: Physical Fitness Training exercise.

THE COURT: Okay. Did you report the back injury—

MR. WILLINGHAM: Yes, I did.

THE COURT: —to your commanding officer at that point?

MR. WILLINGHAM: I went to sick call.

THE COURT: And what happened then?

MR. WILLINGHAM: That was during the period that they told me that I had to pay back the Marine Corps for every day that I was working and that I had to leave immediately. So that is what I did.

THE COURT: I am not sure I understand. Leave immediately to go where?

MR. WILLINGHAM: This is confusing because proper procedures weren't utilized.

THE COURT: Who told you what? You are not telling me anything that I can follow. You went to—

MR. WILLINGHAM: Major Straub, my commanding officer, said that I had to—

THE COURT: All right. You reported to sick call, okay.

MR. WILLINGHAM: Yes.

THE COURT: And what happened when you reported—what day did you report to sick call? The day of the injury? The next day, two days later?

MR. WILLINGHAM: It was part of the checking out procedure.

THE COURT: So that would have been on the 27th?

MR. WILLINGHAM: No, I went earlier than that.

THE COURT: Well when did you go?

MR. WILLINGHAM: I think it was the 24th.

THE COURT: You think it was the 24th. That is when you reported to sick call. So we have at least a period of six/seven days since I don't know how many—that you didn't say anything to anybody.

MR. WILLINGHAM: I said something to somebody, but what I needed to do was go to sick call.

THE COURT: You did not go to sick call for at least six or seven days in between there, is that correct?

MR. WILLINGHAM: I am not sure.

THE COURT: This is critical, sir.

MR. WILLINGHAM: We have the records, Your Honor. If you would just give me a moment.

THE COURT: All right. Actually, why don't we just let you supplement the record in filings because this is going to take way too long.

But presumably there were six or seven days that you didn't go to sick call.

MR. WILLINGHAM: Okay. Yes, Your Honor.

THE COURT: Why?

MR. WILLINGHAM: I had other things to do.

Plaintiff's medical records included in the filings with the court indicate that plaintiff had three appointments, one for sick call and two for physical evaluations. Mr. Willingham never appeared for his appointment at sick call and appeared for only one of the two scheduled physical evaluations. Significantly, the physical evaluation appointment which plaintiff appeared for was on July 22, 1994, the day after plaintiff's alleged injury. Surely had plaintiff suffered an injury the day before, the records would have documented the occurrence. Moreover, the plaintiff never provided the records of the physical evaluation to the court, and there is no evidence that plaintiff was diagnosed with any medical problem. The evidence available to the court is insufficient to demonstrate a cognizable claim for a service related physical injury prior to his separation from the service.

Finally, Mr. Willingham argues that his separation was improper under SECNAVINST 1920.6A, because at the time of his discharge he was on active duty. Again, plaintiff misinterprets this regulation. Apparently, plaintiff believes that by resuming active participation in the reserve program, even briefly, he somehow became exempt from separation from the Reserves, and that his failure to accumulate the twenty-seven (27) credit points should no longer be relevant to his screening by the MPSB. Nothing in the regulations, however, states that a service member can exempt himself from the failure to accumulate the requisite twenty-seven (27) credit points in the Reserves merely by being placed on limited active duty status as a Reservist. The mere fact that

Mr. Willingham resumed his active duty status did not void his failure to accumulate twenty-seven (27) credit points or to comply with MPSB procedures. In fact, the notice sent to Mr. Willingham on July 30, 1993, by the United States Marine Corps, advising him of his screening for possible separation, specifically anticipated this situation and stated:

THE BOARD WILL MAKE THEIR RECOMMENDATIONS FOR RETENTION OR SEPARATION TO THE SECRETARY OF THE NAVY. IN THE MEANTIME YOU HAVE THE FOLLOWING OPTIONS: ... IF ELIGIBLE, *YOU MAY RESUME ACTIVE PARTICIPATION IN A RESERVE PROGRAM*

. . . .

(Emphasis added.)

Moreover, plaintiff's failure to respond to the Board regarding his separation, despite the explicit instructions contained in the letter from the Commanding General, United States Marine Corps Reserve Support Command, to plaintiff, dated July 30, 1993, that a "failure to respond will constitute a waiver of all rights under these proceedings," further demonstrates that plaintiff should have understood that despite his resumption of active participation in the reserve program, and absent his involvement in the MPSB proceedings, he was still eligible for separation. There is no support in the regulation for plaintiff's theory that he was ineligible for separation or changed his reserve status because he resumed his active participation in the reserve program. The fact remains, and plaintiff does not dispute, that a failure to accumulate the twenty-seven (27) credit points renders a service member eligible for separation. Nothing in SECNAVINST 1920.6A provides an exemption from that requirement. Moreover, Marine Corps Order 1001R.56, governing Reserve officers in the Active Duty Special Work program (ADSW–RC), specifically states that the ADSW–RC program is "not intended to circumvent the augmentation or retention procedures," nor "intended to create career status."

For the foregoing reasons, and in accordance with the standard of review articulated above, this court has found that none of the allegations of procedural violations during the separation process asserted by this plaintiff are meritorious. Defendant properly adhered to both statutory, regulatory and guideline authority in the screening and subsequent separation of plaintiff, N. Jerome Willingham. Plaintiff has failed to meet the requisite burden of proof to demonstrate that defendant's actions were arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## CONCLUSION

After a complete review of the record in this case, the statements made by the parties at oral argument, and the governing law, this court finds that plaintiff has presented a justiciable claim before the court and, thus, defendant's motion to dismiss, pursuant to RCFC 12(b), is, hereby, **DENIED.** The plaintiff, however, has failed to meet its burden on summary judgment and its motion is, therefore, DENIED. The defendant, on the other hand, has demonstrated, by clear and convincing evidence, that the Secretary of the Navy's decision to discharge plaintiff Willingham was proper, in accordance with the statutes, regulations, and guidelines in effect, and was not arbitrary or capricious. The defendant's motion for summary judgment, is, therefore, **GRANTED.** The Clerk's Office is directed to enter judgment in this matter in accordance with this decision.[12]

**IT IS SO ORDERED.**

12. In dismissing the complaint, the court assumes that the defendant not only conceded liability and initiated steps to pay plaintiff for the days he remained on duty from July 22 through July 25, 1994, but also has, or will, follow through on executing payment. Certainly, there is no dispute that plaintiff is entitled to be paid for those days. Should the defendant not complete the steps necessary to pay plaintiff for his service between July 22 to July 25, 1994, on its own, the court, hereby, orders that plaintiff be reimbursed for his service time between those dates.